IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GLORIA SANCHEZ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-13-CV-1069-XR |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| *Defendant*. | § | |

## ORDER DENYING LEAVE TO AMEND

On this day, the Court considered Plaintiff's opposed motion for leave to amend her complaint (docket no. 5).  For the following reasons, the Court DENIES her motion.

### I. Background

**A. Factual Background**[1]

On October 29, 2002, Plaintiff Gloria Sanchez obtained a mortgage to purchase the real property located at 630 Blue Bonnet North, Floresville, Wilson County, Texas (the "Property"). In connection with the transaction, Plaintiff executed a promissory note (the "Note") and a deed of trust (the "Deed of Trust").[2]  At some unspecified time, Defendant Wells Fargo Bank, N.A. became the holder of the Note and Deed of Trust.

In or around July 2013, Plaintiff defaulted on her mortgage by failing to fully pay her mortgage payments.  Plaintiff contacted Defendant, and Defendant allegedly advised Plaintiff to apply for a loan modification, which Plaintiff did.  Thereafter, Plaintiff received a letter from

---

[1] The facts are taken from the allegations in Plaintiff's state-court petition. Docket No. 1-5.
[2] Defendant filed copies of the Note and Deed of Trust with the Court. Docket No. 9, Exs. 1 & 2.  The Note and Deed of Trust show that Plaintiff entered into the mortgage on January 21, 2003.  Regardless of whether Plaintiff entered into the mortgage on October 29, 2002 or January 21, 2003, the Court's analysis remains the same.

Defendant dated September 13, 2013. The letter allegedly states that Plaintiff's request for a modification had been denied because Plaintiff failed to submit required documents. Further, the letter allegedly asserts that the foreclosure process will resume. Finally, the letter allegedly states that Defendant will continue to work with Plaintiff to help her avoid foreclosure.

Plaintiff asserts that a few days after receiving the September 13, 2013 letter, she received additional communications from Defendant. Among these communications was a letter dated September 20, 2013. Plaintiff asserts that in this letter, Defendant acknowledges receiving additional documents from Plaintiff and acknowledges that Plaintiff is being considered for a loan modification. Nevertheless, the letter also allegedly states that Defendant will continue the foreclosure process.

On or around September 24, 2013, Plaintiff asserts that she received one final pre-foreclosure letter. This last letter allegedly states that Plaintiff is in the loan modification process. Nevertheless, the letter states that Defendant will sell the Property at a scheduled foreclosure sale because Defendant does not have sufficient time to review Plaintiff's mortgage for a possible modification.

Plaintiff never received a modification. On October 1, 2013, the Property was sold at a foreclosure sale.

**B. Procedural Background**

On October 29, 2013, Plaintiff filed her lawsuit in the 81st Judicial District Court of Wilson County, Texas. She asserts causes of action against Defendant for breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), fraud, and quite title. Plaintiff also seeks declaratory and injunctive relief.

Plaintiff's claims against Defendant are premised on alleged promises and representations Defendant made in a consent order with the United States Department of the Treasury, Office of the Comptroller of the Currency (the "Consent Order").  In the Consent Order, Defendant allegedly promised to offer foreclosure-prevention programs, such as mortgage modifications, to its borrowers.  Additionally, Defendant allegedly promised not to foreclose on any mortgages it held while a mortgage was being considered for a modification.  Plaintiff asserts that Defendant violated these promises by foreclosing on Plaintiff's mortgage while her application for a modification was still under review.  Further, Plaintiff asserts that the Deed of Trust incorporates the promises made in the Consent Order.  Therefore, according to Plaintiff, Defendant must offer her an opportunity to apply for all of the foreclosure prevention programs that Defendant and the federal government have made available to struggling homeowners.  Plaintiff asserts that Defendant cannot foreclose until it has reached a decision on Plaintiff's application for each of these programs.

On the day Plaintiff filed her lawsuit, the state court entered a temporary restraining order, enjoining Defendant from evicting Plaintiff from the Property. Docket No. 1-7.  The temporary restraining order was later extended, and a temporary injunction hearing was set for November 26, 2013. Docket No. 1-11.  On November 22, 2013, Defendant filed an answer in state court and then removed the case to this Court.  Docket Nos. 1 & 1-14.  Defendant asserts that the Court has diversity jurisdiction to hear the case.

On December 23, 2013, Plaintiff moved for leave to amend her complaint to add a non-diverse defendant. Docket No. 5. Plaintiff submitted a proposed first amended complaint, which adds Bruce Neyland, the substitute trustee who sold the Property, as a defendant.  Plaintiff

asserts that Mr. Neyland had a duty to verify that Defendant complied with the Consent Order before selling the Property. Specifically, Plaintiff asserts that Mr. Neyland had a duty to verify that Defendant offered Plaintiff all available foreclosure prevention options—and a duty to verify that Defendant made a decision on those options—before foreclosing. Plaintiff asserts causes of action against Mr. Neyland for breach of a fiduciary duty, negligence, and violation of the DTPA.[3] Defendant responded, and Plaintiff replied. Docket Nos. 9 & 10.

## II. Legal Standard

Under 28 U.S.C. § 1332, a federal court has jurisdiction over controversies involving disputes between citizens of different states where the amount in controversy exceeds $75,000. Here, it is undisputed that Plaintiff is a citizen of Texas, Defendant is a citizen of South Dakota, and the amount in controversy is greater than $75,000. *See* Docket No. 1, at 3–6. Accordingly, the Court has subject matter jurisdiction through diversity jurisdiction to consider the case.

A court's subject matter jurisdiction may be defeated by the addition of a non-diverse defendant. *See Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 477 (5th Cir. 2001) (explaining that generally jurisdiction is determined at the time a suit is removed and post-removal developments to lower the amount in controversy or change the citizenship of a party will not divest jurisdiction; however, the addition of a non-diverse defendant will defeat jurisdiction). Since joinder of a non-diverse defendant has such a drastic consequence on jurisdiction, a court has discretion to permit or deny joinder. *See* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."). While Federal Rule of Civil Procedure 15(a)(2) requires a court to "freely give

---

[3] Plaintiff's DTPA theory is that Mr. Neyland "engaged in an unconscionable act, by foreclosing on the [Property] without verifying that the loan modification process was complete." Docket No. 5-2, at 16.

leave to amend when justice so requires," a district court should scrutinize a proposed amendment to add a non-diverse defendant more closely than an ordinary amendment. *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). When an amendment will defeat jurisdiction, the court must balance the defendant's right in "maintaining the federal forum with the competing interest of not having parallel lawsuits." *Id.* at 1182. Among the factors a court should consider are: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for the amendment; (3) whether the plaintiff will be significantly injured if amendment is not allowed; and (4) any other factor bearing on the equities. *Id.* "As a plaintiff will not be 'significantly injured' by the denial of a clearly meritless claim, it is within the district court's discretion to deny the amendment as futile if there is no reasonable basis to predict that the plaintiff will be able to recover against the non-diverse, non-indispensable party sought to be added as a defendant." *Wilson v. Bruks-Klockner, Inc.*, 602 F.3d 363, 368 (5th Cir. 2010). If the court permits amendment, then it must remand to state court. *Hensgens*, 833 F.2d at 1182.

### III. Discussion

Plaintiff seeks to add the trustee, Mr. Neyland, as a non-diverse defendant for failing in his alleged duty to ensure Defendant's compliance with the Consent Order. Plaintiff asserts causes of action against Mr. Neyland for breach of a fiduciary duty, negligence, and violation of the DTPA.

In Texas, a foreclosure trustee must "act with absolute impartiality and fairness" to both the mortgagor and mortgagee." *Myrad Properties, Inc. v. LaSalle Bank Nat. Ass'n*, 300 S.W.3d 746, 751 (Tex. 2009); *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex. 1977). Nevertheless, a

trustee is not a fiduciary to either party. *See* TEX. PROP. CODE § 51.0074(b)(2) ("A trustee may not be held to the obligations of a fiduciary of the mortgagor or mortgagee."). Moreover, the Texas Property Code insulates trustees from liability for "any good faith error resulting from reliance on any information in law or fact provided by the mortgagor or mortgagee or their respective attorney, agent, or representative or other third party." TEX. PROP. CODE § 51.007(f).

      While courts have allowed claims against trustees for their errors in noticing a property for foreclosure sale or for their errors in the actual conduct of a sale, courts have generally rejected attempts to hold trustees liable for mortgagees' alleged errors in servicing their loans. *See e.g.*, *Magers v. Bank of Am., N.A.*, EP-12-CV-00368-DCG, 2013 WL 705545, at *6 (W.D. Tex. Feb. 26, 2013) (allowing a claim for wrongful foreclosure against a trustee where a debtor alleged that she was not served with notice of a foreclosure sale); *Johnson v. Ocwen Loan Servicing, LLC*, CIV.A. C-09-47, 2009 WL 2215103, at * 3 (S.D. Tex. July 22, 2009) (allowing a claim for breach of duty against a trustee where the borrower alleged that he had not been served with notice of the foreclosure sale); *Mortberg v. Litton Loan Servicing, L.P.*, 4:10-CV-668, 2011 WL 4431946 (E.D. Tex. Aug. 30, 2011) *report and recommendation adopted,* 4:10-CV-668, 2011 WL 4440170 (E.D. Tex. Sept. 22, 2011) (dismissing claims against a trustee where the plaintiff alleged no specific facts indicating the conduct by the trustee could be distinguished from actions taken by the mortgage servicer); *c.f. Eisenberg v. Deutsche Bank Trust Co. Americas*, SA-11-CV-384-XR, 2011 WL 2636135, at *2 (W.D. Tex. July 5, 2011) (finding trustees were nominal parties where they were joined merely "because they were requested by [the mortgagee] to proceed with the foreclosure sale").

Here, Plaintiff's claims are essentially that Defendant improperly serviced Plaintiff's mortgage by failing to comply with the Consent Order before it foreclosed.  Plaintiff seeks to hold Mr. Neyland liable for his failure to verify Defendant's compliance with the Consent Order.  Plaintiff has alleged no other errors committed by Mr. Neyland.

On these facts, Plaintiff cannot state a claim against Mr. Neyland.  Mr. Neyland is not a fiduciary to Plaintiff. *See* TEX. PROP. CODE § 51.0074(b)(2).  Thus Plaintiff cannot state a breach of fiduciary duty claim against Mr. Neyland.  Moreover, contrary to Plaintiff's assertion, Mr. Neyland had no duty to conduct an "independent investigation" into whether Defendant complied with the Consent Order. *See* Docket No. 5-2, at 4.  Mr. Neyland simply had a duty to "act with absolute impartiality and fairness" in noticing the Property for foreclosure and selling the Property. *See Hammonds*, 559 S.W.2d at 347.  In carrying out that duty, he could rely on Defendant's representations that Plaintiff was in default and that Plaintiff had not cured her default. *See* TEX. PROP. CODE § 51.007(f); *Townsend v. Barrett Daffin Frappier Turner & Engel, LLP*, 09-12-00564-CV, 2013 WL 5874607, at *6. (Tex. App.—Beaumont Oct. 31, 2013, pet. filed) (rejecting a borrower's claim that a trustee breached a fiduciary duty by failing to verify the whereabouts of the original note and deed of trust and by failing to verify whether there had been an assignment to another party).  Without an additional duty to verify the underlying basis for the foreclosure, Mr. Neyland cannot be liable for negligence. *See Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) ("Negligence actions in Texas require a legal duty owed by one person to another.").  Nor were Mr. Neyland's actions "unconscionable" under the DTPA since Plaintiff was in default at the time of the foreclosure sale and Mr. Neyland relied on Defendant's representations, as allowed by law. *See* TEX. BUS. & COMM. CODE § 17.50(a)(3)

(allowing a DTPA claim for "any unconscionable action"); TEX. PROP. CODE § 51.007(f) (stating that a trustee shall not be liable for any good faith error resulting from reliance upon information provided by a mortgagee).[4]

Since Plaintiff cannot state a claim against Mr. Neyland, Plaintiff is not significantly injured by the Court's denial of her proposed amended complaint adding a non-diverse party. *See Wilson*, 602 F.3d at 368. Accordingly, it is within the Court's discretion to deny the proposed amendment. *Id.* Therefore, without considering the other *Hensgens* factor, the Court denies Plaintiff's motion for leave to amend her complaint.

### IV. Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's opposed motion for leave to amend her complaint (docket no. 5).

It is so ORDERED.

SIGNED this 24st day of February, 2014.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[4] Moreover, the DTPA requires that a plaintiff be a "consumer." *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)). This Court has recognized that under Texas law, a plaintiff who seeks a mortgage modification and receives free services from the mortgage holder or servicer in connection with the modification is not a consumer under the DTPA. *Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 580 (W.D. Tex. Mar. 30, 2012).